# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LUIS MIGUEL ORTIZ TORRES,

      Plaintiff,

      v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,[1]

      Defendant.

CIVIL ACTION NO. 3:20-cv-02049

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Luis Michael Ortiz Torres, seeks judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security n July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. See Fed. R. Civ. P. 25(d); see also 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I. BACKGROUND

On July 2, 2018, Torres protectively filed claims for disability insurance benefits and supplemental security income, both asserting a disability onset date of October 15, 1998. Both claims were initially denied by state agency reviewers on October 11, 2018. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on July 30, 2019, before an administrative law judge, Randy Riley (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Sheryl Bustin. The plaintiff was represented by counsel at the hearing.

On September 17, 2019, the ALJ denied Torres's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Torres was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Torres

had not engaged in substantial gainful activity since January 1, 2018, the date which he first met the insured status requirements of the Social Security Act.  At step two, the ALJ found that Torres had the severe impairments of: fracture of the left lower extremity; lumbar spondylosis; myofascial pain syndrome; obstructive sleep apnea; left elbow epicondylitis; and obesity. At step three, the ALJ found that Torres did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Torres's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Torres had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with the following limitations:

> [T]he claimant can never operate foot controls with the left foot.  He can never climb ladders, but can occasionally climb stairs.  He can never crawl, but can

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

> occasionally balance, stoop, kneel, and crouch.   He
> must  avoid  exposure  to  extreme  cold,  wetness,
> excessive vibration, and hazards.

(Tr.19)

In making these factual findings regarding Torres's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, the ALJ concluded that Torres had no past relevant work.

At step five,  the ALJ concluded that Torres was capable of performing work that exists in significant numbers in the national economy.  Based on Torres's age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Torres was capable of performing the requirements of representative occupations such as a cleaner, housekeeping (DOT #323.687-014),

bakery worker, conveyor line (DOT #524.687-022).[3] Based on this finding, the ALJ concluded that Torres was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on September 22, 2020, making the ALJ's September 2019 decision the final decision of the Commissioner subject to judicial review by this court.

Torres timely filed his complaint in this court on November 5, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial

---

[3] The ALJ also recorded an alternative finding that, even if Torres's RFC was further reduced to sedentary, he was still  capable of performing the requirements of representative occupations such as final assembler, optical goods (DOT # 713.687-018) and dowel inspector (DOT # 669.687-014).

evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Torres asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ found certain of his impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary; (2) the ALJ failed to properly evaluate prior administrative findings, including the medical opinion of a non-examining state agency medical consultant; and (3) the ALJ failed to properly evaluate medical opinions by a treating physician and a treating physical therapist.[4]

---

[4] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ failed to consider the limitations in the RFC from those of the impairments which the ALJ found to be severe; (2) the ALJ failed to consider the limitations in the RFC from those of the impairments which the ALJ found to be non-severe, or never mentioned; and (3)  the ALJ failed to give proper weight to the medical opinions of his treating physician and physical therapist. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that these very generalized grievances rest on the three specific errors we have articulated above.

The plaintiff contends that the ALJ erred in finding that various of the plaintiff's medically determinable impairments were not severe.

At step two, the ALJ found that Torres had several severe impairments including:  fracture of the left lower extremity; lumbar spondylosis; myofascial pain syndrome; obstructive sleep apnea; left elbow epicondylitis; and obesity.  The ALJ considered the severity of an injury to Torres's right foot as well, but he concluded that the injury was not severe because it resolved in less than a year, thus failing to meet the durational threshold necessary for it to constitute a severe impairment.  The ALJ then proceeded on to step three of the five-step sequential evaluation process.

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F.

Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Torres's favor at step two, finding that he had several other severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of  any other impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

## B.    Evaluation    of    Medical    Opinions    and    Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of

conflicting medical opinions and prior administrative findings presented in the administrative proceedings below.  As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision

only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in July 2018. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations

governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1)

supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.* §§ 404.1527(c)(4), 416.927(c)(4) (consistency).[5] An ALJ is specifically

---

[5] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

*(continued on next page)*

required to address these two factors in his or her decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

1.   ***Prior Administrative Findings***

The ALJ considered the prior administrative findings in this case, finding them to be "highly persuasive." The ALJ found the findings and

---

persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

opinion by a state agency medical consultant contained there in to be "consistent with trends in the claimant's imaging and physical examinations." (Tr. 24).

The prior administrative findings included the opinion of a state agency medical consultant, Catherine Smith, M.D., who had found Torres capable of performing a limited range of light work with some postural and environmental limitations. Based on her review of Torres's medical records, including opinions upon which the plaintiff's appeal is based, Dr. Smith found that that Torres was capable of lifting r carrying up to 20 pounds occasionally and up to 10 pounds frequently, with "limited" use of his left lower extremity to operate foot controls. Dr. Smith found that Torres's functional capacity included various postural and environmental limitations, including no climbing of ladders, ropes, or scaffolds, no crawling, no more than occasional balancing, stooping, kneeling, crouching, or climbing ramps or stairs, and no concentrated exposure to extreme cold, wetness, vibrations, or hazards such as machinery or unprotected heights. (Tr. 61-63, 71-73). In evaluating Dr. Smith's opinion, the ALJ found it highly persuasive,

> given that [Dr. Smith] reviewed the available evidence
> prior to authoring her opinion, and given that she is a

medical consultant possessing Social Security program knowledge. Further Dr. Smith's contention that the claimant is limited to light work with additional postural limitations is consistent with trends in the claimant's imaging and physical examinations, demonstrating mild-to-moderate abnormalities of the lumbar spine, left ankle, and left elbow. Given exacerbation by obesity, the claimant's preclusions from climbing ladders and crawling are justified, and his environmental limitations allow him to avoid undue risk of harm, given his lack of lumbar [range of motion] and poor ankle functions.

(Tr. 24).

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. The ALJ expressly articulated his findings on supportability and consistency, describing the imaging and examination findings that supported Dr. Smith's findings.[6] The ALJ also explicitly considered Dr. Smith's "understanding of [the agency's] disability program's policies and evidentiary requirements" as a state agency medical consultant. See 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

Accordingly, we find the ALJ's evaluation of the prior administrative findings, including the medical opinion of state agency

---

[6] The plaintiff complains that the ALJ failed to more robustly cite to medical records that supported Dr. Smith's findings.

medical consultant Dr. Smith, is supported by substantial evidence and was reached based upon a correct application of the relevant law. But "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004); *see also Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.") (citation omitted); *Kupiec v. Kijakazi*, No. 20-1240, 2021 WL 5015775, at *2 (W.D. Pa. Oct. 28, 2021) ("An ALJ is not required to discuss or cite every piece of evidence in the record."). It is only necessary that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, which it does here. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

The plaintiff has not challenged the ALJ's evaluation of these prior administrative findings.

### 2. *Treating Family Physician Opinion*

On November 15, 2018, Torres's treating family physician, Bede

Soon T. Cha, D.O., completed a physical residual functional capacity questionnaire  detailing his opinion with respect to Torres's functional limitations beginning October 15, 1998. Dr. Cha noted Torres's diagnosis and symptoms of chronic left ankle and foot pain and restricted range of motion with numbness and tingling of left foot, chronic midline back pain at low thoracic region, insomnia due to pain, and intermittent rigidity of bilateral extremities at the hands. He noted his clinical findings and objections signs as deformity and scarring at the left ankle, diminished sensation at left foot, tenderness at mid back at T8 region, and reduced range of motion of the left ankle/foot. He opined that Torres's experiences of pain and other symptoms would interfere with his attention and concentration constantly; that he was incapable of even a "low stress" job; that he could walk for about 1.5 blocks before requiring rest; that he could sit, stand, or walk for less than 2 hours each in an 8-hour workday; that he required an at-will sit/stand option; that he would need to take 10 minute breaks after every 10 minutes of work; and that he would need to elevate his legs all day when seated.  Dr. Cha found that Torres could lift or carry up to 20 pounds occasionally but less than 10 pounds frequently.  Dr. Cha opined that Torres was further

limited to only occasional sustained flexon of his neck (looking down) and only rare holding of his head in a static position.  Dr. Cha found Torres to be subject to postural limitations, including no twisting, crouching, squatting, or climbing ladders, and only occasional stooping or climbing stairs.  Dr. Cha opined that Torres was limited to using his hands bilaterally to grasp, turn, or twist objects no more than 50% of the workday, using his fingers for fine manipulations no more than 5% of the workday, and using his arms to reach no more than 10% of the workday.   Finally, Dr. Cha opined that Torres's impairments or treatment were likely to cause him to be absent from work 15 out of 20 workdays per month.  (Tr. 351-56).[7]

Upon review, the ALJ found this opinion to be "generally unpersuasive."   The ALJ found Dr. Cha's opinion to be generally unsupported by and inconsistent with the medical evidence, explaining:

> If Dr. Cha's contentions regarding the claimant's ability to handle stress, or to attend and concentrate, were correct, the record would be replete with related complaints and treatment for substantial psychological disorder.  Dr. Cha's contention that the claimant can sit for no more than 2 hours in a workday, and stand/walk for no

---

[7] We note that the record includes a second identical copy of this same document.  (Tr. 357-62).

> more than 2 hours in a workday, is inconsistent
> with the generally mild-moderate findings of
> lumbar imaging, and is further inconsistent with
> the claimant's activities of daily living, as well as
> assessments of gait revealing only mild
> abnormalities. Dr. Cha's opined restrictions of
> the neck are not supported by objective imaging
> or examinations of the cervical spine, and there is
> no obvious rationale as to why the claimant would
> need to miss work more than 4 days per month.

(Tr. 25).

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. The ALJ expressly articulated his findings on supportability and consistency describing the medical and other evidence that was inconsistent with Dr. Cha's findings.[8]

Accordingly, we find the ALJ's evaluation of the opinion of treating family physician Dr. Cha is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 1. Physical Therapist Opinion

On February 14, 2017, physical therapist Michael Landis, conducted a physical therapy initial examination and evaluation of

---

[8] See supra note 6.

Torres.  In his examination report, Landis found that Torres had severe functional limitations *at the time*, including an inability to stand for more than 5 minutes at a time, an inability to sit for more than 10 minutes at a time, and a need to use a single-point cane to ambulate. Landis recommended a four-week program of physical therapy twice weekly, with a goal of increasing Torres's tolerance for standing and walking to more than 10 minutes at a time by the end of the four-week program.  (Tr. 238-41).

Upon review, the ALJ found that this opinion "unpersuasive." In particular, the ALJ noted that

> it is unclear if Mr. Landis was giving his own opinion or merely reciting what he had been told by the claimant.  Further, even if authored entirely by Mr. Landis, the sitting and standing limitations opined by Mr. Landis are unsupported by trends in the objective imaging and examinations of record.  Indeed, Mr. Landis indicated that the claimant required a cane, but treating source, Dr. Cha, expressly opined that the claimant did not need such a device.  The opinion provided by Mr. Landis implies disability, and this is not supported by trends in medical evidence, nor by the claimant's history of generally conservative treatment.

(Tr. 24).

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. The ALJ expressly articulated his findings on the supportability and consistency, describing medical evidence that was inconsistent with Landis's findings, at least as construed by counsel for the plaintiff as an opinion on Torres's permanent impairments—a construction that appears fairly strained given the physical therapist's short-term goals for the patient.

Accordingly, we find the ALJ's evaluation of the opinion of physical therapist Landis is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Torres was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.   Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated:  March 31, 2022                     *s/Joseph F. Saporito, Jr.*
                                           JOSEPH F. SAPORITO, JR.
                                           United States Magistrate Judge

- 21 -